# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TYRICK THOMAS,<br>*Plaintiff*, | )<br>)<br>) | 3:23-cv-1681 (SVN) |
| v. | )<br>) | |
| DEPARTMENT OF CORRECTION, ET AL,<br>*Defendants*. | )<br>)<br>)<br>) | April 17, 2024 |

### <u>INITIAL REVIEW ORDER</u>

*Pro se* Plaintiff Tyrick Thomas[1] filed this action pursuant to 42 U.S.C. § 1983 while a sentenced inmate at Cheshire Correctional Institution.  He names eleven Defendants:  the Department of Correction, Commissioner Angel Quiros, District Administrator Nick Rodriguez, Warden Reis, Warden Guadarrama, Captain Ramos, Lieutenant Carey, Lieutenant Venoutsos, Nurse Jane Doe, Mental Health Worker Jane Doe, and Correctional Officer White.  Plaintiff lists twelve claims in his introductory statement:  claims for violation of the Eighth Amendment, violation of the Fourteenth Amendment, "failure to act, failure to protect, spoliation of evidence, perjur[]ed statement, supervisory liability, failure to adequately train, excessive use of force, violation of the Americans with Disabilities Act, violation of section 504 of the Rehabilitation Act, and violation of the Prison Rape Elimination Act."  *See* Compl., ECF No. 1 at 2.  Plaintiff then asserts only two causes of action, that Defendants used excessive force against him in violation of his rights under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and that

---

[1] It appears Plaintiff may have since been released from custody.  *See* Conn. Dep't of Corr., Offender Information Search, www.ctimnateinfo.state.ct.us (last accessed April 17, 2024) (not showing Plaintiff as a current inmate).  The Court may take judicial notice of matters of public record.  *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

Defendants violated his rights under the Eighth Amendment and the Fourteenth Amendment Due Process Clause regarding the use of excessive force, and through a related disciplinary action. Plaintiff names all individual Defendants in their individual and official capacities but does not include a prayer for relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on this initial review, Plaintiff may proceed on his Eighth Amendment claims for use of excessive force and claims for failure to intervene against Defendants Ramos, Carey, and White in their individual capacities for damages only. All other claims are dismissed.

## I. FACTUAL BACKGROUND

The Court does not include herein all of the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

On July 6, 2023, Captain Ramos approached Plaintiff for a targeted cell search. ECF No. 1 ¶ 1. The procedure for a targeted cell search is to record the search on a hand-held camera and preserve any evidence discovered. *Id.* ¶ 2.

When Captain Ramos and Officer White approached the cell, Plaintiff was blowing his nose with a piece of toilet paper. *Id.* ¶ 3. As the cell door opened, Plaintiff was throwing the toilet paper into the toilet and starting to stand up to see what was happening. *Id.* ¶ 4.

As he threw the toilet paper away, Captain Ramos rushed Plaintiff and placed him in a "rear naked choke hold." *Id.* ¶¶ 5–6. While choking him from behind, Captain Ramos kicked Plaintiff in his calves, forcing him to the ground. *Id.* ¶ 8. Captain Ramos then grabbed and squeezed Plaintiff's genitals and struck him in the face with a closed fist. *Id.* ¶ 9. Plaintiff screamed to let him go. *Id.* ¶ 10.

Officer White and other unidentified officers began punching Plaintiff and continued to do so after he had been restrained and no longer posed any threat. *Id.* ¶¶ 11–12. Lieutenant Carey sprayed Plaintiff with a chemical agent a few inches from his face and body after he no longer posed a threat. *Id.* ¶ 13. Plaintiff was dragged to his feet while he yelled in pain and claimed that he was disabled and walked with a cane. *Id.* ¶ 14. Plaintiff was slammed against the wall and Lieutenant Carey again sprayed him with the chemical agent. *Id.* ¶¶ 15–16.

Captain Ramos proceeded to issue Plaintiff an allegedly false disciplinary report and placed him in segregation. *Id.* ¶ 17. Plaintiff alleges that Mental Health Worker Doe placed him on Behavior Observation Status to inflict psychological torture. *Id.* ¶ 18. However, despite this status, Plaintiff retained a segregation unit uniform and was placed on in-cell restraints. *Id.* ¶ 19.

Plaintiff was not permitted to report the alleged sexual assault for three days. *Id.* ¶ 20. On July 9, 2023, Plaintiff told Mental Health Worker John Doe that he had been sexually assaulted

and beaten.  *Id.* ¶ 21.  Plaintiff was immediately sent to UConn Health Center.  *Id.* ¶ 22.  At the hospital, Plaintiff reported the sexual assault to the state police.  *Id.* ¶ 23.  He also underwent tests which showed his genitals were swollen.  *Id.* ¶ 24.  He was prescribed pain medication and given ice compresses to reduce the swelling.  *Id.* ¶ 25.[3]

## II.    DISCUSSION

Plaintiff asserts two causes of action.  First, he claims that all Defendants violated section 504 of the Rehabilitation Act by using excessive force during the cell search and then confining him, a disabled person who walks with a cane, in segregation on Behavior Observation Status and in-cell restraints.  Second, Plaintiff asserts violations of his Eighth and Fourteenth Amendment rights based on the alleged use of excessive force and the use of the disciplinary report and procedures to cover up the use of force.  In light of the special solicitude afforded *pro se* litigants, the Court also addresses the other related claims raised by Plaintiff in his introductory statement.

Plaintiff does not include a prayer for relief.  As currently alleged, any relief Plaintiff seeks would be entirely retrospective in nature; he does not allege any ongoing injuries they could be remedied by the issuance of prospective injunctive relief.  Because any claims for retrospective injunctive relief would be barred by the Eleventh Amendment, the Court assumes that Plaintiff seeks damages against all Defendants only.  *See Nadimi v. Brown*, 8 F. App'x 122, 125 (summary order) (2d Cir. 2001) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 144 n.25 (1984)).

### A.    Department of Correction

Plaintiff names the Department of Correction as a defendant.  The Department of Correction is a state agency and is not a "person" subject to suit under section 1983.  *See Will v.*

---

[3] Plaintiff names Nurse Jane Doe as a Defendant, but does not include any allegations directed at her.  The Court will assume that Nurse Jane Doe treated Plaintiff at UConn.

*Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding state agencies cannot be sued under section 1983); *Bhatia v. Conn. Dep't of Children & Families*, 317 F. App'x 51, 52 (2d Cir. 2009) (summary order) (same).  Accordingly, all claims against the Department of Correction are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

  B. <u>Rehabilitation Act</u>

   Plaintiff contends that Defendants violated his rights under section 504 of the Rehabilitation Act by using excessive force against him and confining him on Behavior Observation Status and in-cell restraints.  To state a plausible claim under the Rehabilitation Act, Plaintiff must allege facts showing that (1) he is a "qualified individual with a disability," (2) the Department of Correction is an entity subject to the Rehabilitation Act, and (3) he was "denied an opportunity to participate in or benefit from . . . services, programs, or activities" of the Department of Correction, or that the Department of Correction "otherwise discriminated against h[im] by reason of [his] disability."  *Cardoza v. Pullen*, No. 3:22-CV-00591 (SVN), 2022 WL 3212408, at *16 (D. Conn. Aug. 9, 2022) (citing *Wright v. N. Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016)).

   The first two elements appear to be met, for purposes of initial review.  First, Plaintiff alleges that he is disabled because he requires a cane to walk.  Second, the Supreme Court has held that the Rehabilitation Act applies to state prisons.  *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998).  Thus, the question becomes whether Plaintiff has been denied programs or services or has otherwise been discriminated against because of his disability.

   Plaintiff alleges that Captain Ramos initiated the use of force because he observed Plaintiff attempting to throw something in the toilet as Captain Ramos was about to begin a targeted cell search.  As Plaintiff fails to allege any facts permitting an inference that the use of force and

subsequent placement on Behavior Observation Status or in-cell restraints was done because he is disabled, he fails to state a plausible Rehabilitation Act claim.  The Rehabilitation Act claim is thus dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Court notes that the same three-part standard applies to the Americans with Disabilities Act claim raised in Plaintiff's introductory statement.  *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (stating that "unless [a] subtle distinction[] is pertinent to a particular case, we treat claims under the two statutes identically).  Thus, as Plaintiff fails to state a cognizable Rehabilitation Act claim, he also fails to state a cognizable Americans with Disabilities Act claim as well.

C.    Use of Excessive Force

Plaintiff states a plausible claim for use of excessive force.  To state a claim for use of excessive force in violation of the Eighth Amendment, Plaintiff must allege facts establishing both objective and subjective components.  *See Sims v. Artuz*, 230 F.3d 14, 20–21 (2d Cir. 2000).  The objective component focuses on the harm done to the inmate in light of "contemporary standards of decency."  *Id.* at 21 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  The "amount of harm" required "depends on the nature of the claim."  *Id.*  Although some degree of injury is usually required, the prisoner need not show that he suffered a significant injury to state a claim for use of excessive force.  *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.") (quoting *Hudson*, 503 U.S. at 4)).  However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'"  *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9).  The subjective component of the excessive force standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather than as a part

of a 'good faith effort to maintain or restore discipline.'" *Id.* at 40 (quoting *Hudson*, 503 U.S. at 9).

The extent of an inmate's injuries is one factor the court may use to determine whether correctional staff could "plausibly" have considered the force necessary in a particular situation. *Hudson*, 503 U.S. at 7. Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotation marks and citation omitted).

Plaintiff alleges that Captain Ramos choked him and forced him to the ground, punched him in the face, and then grabbed, squeezed, and twisted his genitalia; that Lieutenant Carey sprayed him with a chemical agent at close range when he no longer posed a threat; and that Officer White joined with other officers in assaulting him before and after he was restrained. Although Plaintiff alleges that Captain Ramos commenced the use of force when he observed Plaintiff trying to throw something in the toilet just before the targeted cell search, it is at least plausible that the amount of force alleged was more than necessary. For example, although the use of the chemical agent while Plaintiff was resisting may have been warranted, using a chemical agent against a compliant inmate is considered a use of excessive force. *See Hinton v. Pearson*, No. 3:21-cv-863 (MPS), 2021 WL 4521994, at *6 (D. Conn. Oct. 4, 2021); *Bowman v. Dilworth*, No. 3:20-cv-756 (CSH), 2021 WL 2551142, at *8 (D. Conn. June 22, 2021). Similarly, continuing to assault an inmate who has been restrained appears to be a malicious act, not one intended to restore discipline. *See Vaughn v. Baron*, No. 3:23-cv-1585 (VAB), 2024 WL 308511, at *3 (D. Conn. Jan. 26, 2024). The claim for use of excessive force will proceed against Defendants Ramos, Carey, and White for further development of the record.

D. <u>Failure to Intervene</u>

The Court construes Plaintiff's claims for "failure to act" and "failure to protect" in his introductory statement as a claim for failure to intervene in the above use of excessive force. "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Brannen*, 17 F.3d 552, 557 (2d Cir. 1994). An officer is "under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016). The officer must have had "a realistic opportunity to intervene to prevent the harm from occurring" for liability to attach. *Anderson*, 17 F.3d at 557.

Because Plaintiff's claim for excessive force will proceed against Defendants Ramos, Carey, and White, the Court will allow Plaintiff's claim for failure to intervene to proceed against these Defendants as well. Plaintiff alleges that all three Defendants were present in his cell when the others used excessive force when he was being compliant and after he had been restrained. This suggests the officers observed, and had a realistic opportunity to prevent, the force. Thus, Plaintiff may proceed on a claim that each of these Defendants failed to intervene in the use the excessive force.

E. <u>Denial of Due Process</u>

Plaintiff asserts a claim for denial of his rights under the Fourteenth Amendment's Due Process Clause relating to his placement in restrictive housing and on Behavior Observation Status.[4] In this claim, Plaintiff references a disciplinary charge, based on a false report, and a

---

[4] Plaintiff does not allege how long he was held on Behavior Observation Status. However, as he alleges that he was taken to the hospital three days later, the Court assumes that it was less than three days.

hearing process.  He also alleges that Mental Health Worker Doe placed him on Behavior Observation Status to inflict psychological torture.  The disciplinary process summary report attached to the complaint shows that Plaintiff was sanctioned with fifteen days' confinement in punitive segregation, ninety days' loss of telephone, ninety days' loss of commissary, and loss of 60 days of Risk Reduction Earned Credit ("RREC"), for a purported assault on Captain Ramos during the cell search.  *See* Ex. 2, July 12, 2023, Disciplinary Process Summ. Rep., ECF No. 1 at 17–18.

Because Plaintiff was subjected to "mixed sanctions," *i.e.*, sanctions affecting both the conditions of his confinement and the duration of his confinement (through the loss of RREC), his due process claims are barred by the favorable termination rule set forth in *Heck v Humphrey*, 512 U.S. 477 (1994), unless he affirmatively waives any challenge, "once and for all," to the sanctions affecting the duration of his confinement.  *See Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006).

Typically, the Court would stay the case and issue an order to Plaintiff to either withdraw the due process claim or waive for all time any challenge to the loss of RREC, in order to proceed. *See, e.g., Meija v. Kurtzenacker*, No. 3:21cv1222 (MPS), 2023 WL 2139509, at *1 (D. Conn. Feb. 1, 2023); *Green v. Caron*, No. 3:21cv269 (MPS), 2021 WL 2206609, at *5 (D. Conn. June 1, 2021).  However, as explained below, even if Plaintiff agreed to the waiver, the remaining sanctions do not support a cognizable due process claim.  Thus, issuance of this type of order is not necessary.

To state a claim for violation of his right to procedural due process, Plaintiff must allege facts showing that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law.  *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (summary order) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)).  The Due

Process Clause, standing alone, generally does not create a protected liberty interest in maintaining certain conditions of confinement as long as the newly imposed conditions are "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (finding no protected liberty interest in freedom from interstate prison transfer, even to a maximum-security facility, because prison officials have discretion to transfer prisoners among correctional facilities "for whatever reason").   However, there are circumstances under which a state statute, policy, or regulation can create a protected liberty interest relating to conditions of confinement.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that a liberty interest warranting due process protection "will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection under the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.   In *Sandin*, the Supreme Court held that confinement in the restrictive housing unit for thirty days for disciplinary reasons did not implicate a constitutionally protected liberty interest.   515 U.S. at 485–86.   Further, the Second Circuit has held that confinement in restrictive housing for less than 101 days does not constitute an atypical and significant hardship sufficient to state a due process claim under *Sandin*. *See Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (finding that 101-day confinement in restrictive housing, while "doubtless unpleasant," did not constitute atypical and significant hardship); *see also Proctor v. LeClaire*, 846 F.3d 597, 610 n.6 (2d Cir. 2017) (stating a fifty-one day term in segregated housing "likely would not require any constitutional process today"); *Lewis v. Sieminski*, No. 3:08-CV-728 (JCH), 2010 WL 3827991, at *6 (D. Conn. Sept. 22, 2010) (noting that "the decisions in the Second Circuit are unanimous that keeplock or [segregated housing unit]

confinement of 20 days or less in New York prisons is not 'atypical or significant hardship' under *Sandin*").

As the Second Circuit has held that a brief confinement in restrictive housing, such as the fifteen days experienced by Plaintiff, does not constitute an atypical and significant hardship, this sanction is insufficient to support a claim for denial of due process. The additional sanctions of loss of privileges do not alter this determination. *See Baldwin v. Arnone*, No. 3:12-cv-243(JCH), 2013 WL 628660, at *3, 8 (D. Conn. Feb. 19, 2013) (holding that sanctions of "fifteen days confinement in punitive segregation, thirty days loss of recreation, and ninety days loss of telephone privileges" is insufficient to demonstrate atypical and significant hardship to support due process claim under *Sandin*, and collecting cases).

As Plaintiff's disciplinary sanctions do not constitute an atypical and significant hardship, he fails to state a plausible due process claim based on the guilty finding at the disciplinary hearing. Plaintiff's Fourteenth Amendment due process claim is therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

F.      Defendants Quiros, Rodriguez, Guadarrama, Reis, and Venoutsos

Commissioner Quiros, District Administrator Rodriguez, Warden Guadarrama, Warden Reis, and Lieutenant Venoutsos all appear to be sued as supervisory officials. To state a cognizable claim against these Defendants, Plaintiff must allege facts showing that each defendant was personally involved in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). This is true with respect to supervisory officials as well. *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (holding a plaintiff must

"plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Plaintiff names these supervisory officials but alleges no facts against them. The exhibits attached to the complaint show that District Administrator Rodriguez denied Plaintiff's disciplinary appeal and that Rodriguez sent a copy of his decision to Wardens Guadarrama and Reis. *See* Ex. 3, July 20, 2023, Appeal Form, ECF No. 1 at 20; Ex. 5, July 27, 2023, Letter, ECF No. 1 at 25. The only reference to Lieutenant Venoutsos is his signature as supervisor on another disciplinary report attached as an exhibit. *See* Ex. 1, July 7, 2023, Disciplinary Rep., ECF No. 1 at 14.

Because Plaintiff has failed to allege these Defendants' personal involvement, all claims against Defendants Quiros, Rodriguez, Guadarrama, Reis, and Venoutsos are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Further, to the extent that Plaintiff is attempting to bring a failure to train claim against the supervisory defendants, such claim fails. *See Boyd v. Larregui*, No. 3:19-cv-579 (CSH), 2020 WL 5820491, at *7 (D. Conn. Sept. 30, 2020) (dismissing claim for failure to train subordinates where plaintiff failed to establish "personal involvement of supervisory defendant" or "provide particular relevant deficiencies in training program").

### G.  Other Claims

Aside from the claims already addressed in this order, Plaintiff has also mentioned claims for spoliation of evidence, perjured statement, and violation of the Prison Rape Elimination Act in his introductory statement. None of these claims may proceed.

First, Plaintiff has no private cause of action to assert a claim under the Prison Rape Elimination Act. *See Abrams v. Erfe*, No. 3:17-CV-1570 (CSH), 2018 WL 691714, at *16 (D.

Conn. Feb. 2, 2018) (collecting cases holding that the Prison Rape Elimination Act does not create a private right of action for prisoners).  To the extent Plaintiff raises a claim under this federal statute, it is dismissed.

Plaintiff's remaining state law claims regarding spoliation of evidence and perjured statements, are not federal causes of action.  *See Andrews v. City of New York*, No. 23-CV-2411 (LTS), 2023 WL 3724978, at *5 (S.D.N.Y. May 30, 2023) (holding there is no independent federal cause of action for spoliation of evidence) (citing cases); *Chien v. Commonwealth Biotechnologies, Inc.*, No. 3:12CV1378 (AWT), 2013 WL 4482750, at *8 (D. Conn. Aug. 21, 2013) (holding there is no civil cause of action for perjury).  The Court construes Plaintiff's complaint as bringing a state law claim for intentional spoliation but finds Plaintiff has failed to state such a claim.  Plaintiff must allege "the defendant's knowledge of a pending or impending civil action involving the plaintiff; (2) the defendant's destruction of evidence; (3) in bad faith, that is with intent to deprive the plaintiff of his cause of action; (4) the plaintiff's inability to establish a prima facie case without the spoliated evidence; and (5) damages." *Larsen v. Berlin Bd. of Educ.*, 588 F. Supp. 3d 247, 264–65 (D. Conn. 2022) (quoting *Traylor v. Hammond*, 94 F. Supp. 3d 203, 222 (D. Conn. 2015) (citing *Rizzuto v. Davidson Ladders, Inc.*, 280 Conn. 225, 244–45 (2006)).  Plaintiff only alleges that Defendants failed to videotape the cell search and did not preserve any evidence; this is a far cry from alleging that Defendants intentionally destroyed evidence.  For these reasons, the Court dismisses Plaintiff's claims for spoliation of evidence and perjury.

The Court also notes that none of Plaintiff's claims implicate Nurse Jane Doe, who treated Plaintiff at UConn.  Defendant Nurse Jane Doe is therefore dismissed.

H.  Official Capacity Claims

Plaintiff states that he names all individual Defendants in both their individual and official capacities.  As he includes no prayer for relief, and would not be entitled to retrospective injunctive relief, the Court has assumed that he seeks damages only.  However, Plaintiff may obtain damages from the defendants only in their individual capacities.  The Eleventh Amendment prohibits an award of damages against state officials in their official capacities unless the state has waived that immunity or Congress has abrogated it.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Section 1983 does not abrogate state sovereign immunity.  *Quern v. Jordan*, 440 U.S. 332, 341 (1979).  Nor does the plaintiff allege facts suggesting that the state has waived immunity in this case.  Thus, as all Defendants are state officials, Plaintiff cannot obtain damages from any defendant in his or her official capacity.  All claims for damages against the Defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

**ORDERS**

The case will proceed on the Eighth Amendment claims for use of excessive force and claims for failure to intervene against Defendants Ramos, Carey, and White in their individual capacities for damages only.  All other claims are DISMISSED pursuant to 28 U.S.C. § 1915A(b).

Plaintiff has two options as to how to proceed in response to this Initial Review Order:

(1)     If Plaintiff wishes to proceed immediately on the claim against Defendants Ramos, Carey, and White and only as set forth above, he may do so without further delay.  If Plaintiff selects this option, he shall file a notice on the docket by **May 17, 2024**, informing the court that he elects to proceed with service as to the claims listed above.  The court will then begin the effort to serve process on the listed defendants.

(2)     Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in

his Complaint that have been dismissed without prejudice in order to attempt to state a viable claim, he may file an Amended Complaint by **May 17, 2024**.  An Amended Complaint, if filed, will completely replace the Complaint and the Court will not consider any allegations made in the Complaint in evaluating any Amended Complaint.  The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein.  If Plaintiff elects to file an Amended Complaint, the Complaint this Initial Review Order addressed will not proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **May 17, 2024**, the Court will presume that Plaintiff wishes to proceed on the Complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Change of Address**.  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or counsel for Defendants of his new address.

SO ORDERED at Hartford, Connecticut, this 17th day of April, 2024.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE